UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMANDA SMULLIN,<br><br>    Petitioner,<br><br>v.<br><br>CAROLYN W. COLVIN[1],<br>Acting Commissioner of Social Security Administration,<br><br>    Respondent. | Case No. 1:12-cv-00414-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court for its consideration is Petitioner Amanda Smullin's ("Petitioner") Petition for Review (Dkt. 1) of the Respondent's denial of social security benefits, filed August 9, 2012. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will remand to Commissioner for further proceedings consistent with this opinion.

---

[1] Carolyn W. Colvin is substituted for Michael J. Astrue. Colvin became the Acting Commissioner of Social Security Administration on February 14, 2013.

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on October 1, 2009, claiming disability beginning May 31, 2009. This application was denied initially and on reconsideration, and a hearing was held on March 24, 2011, before Administrative Law Judge ("ALJ") John T. Molleur. After hearing testimony from Petitioner and a vocational expert, ALJ Molleur issued a decision finding Petitioner not disabled on May 10, 2011. Petitioner timely requested review by the Appeals Council, which denied her request for review on June 7, 2012.

Petitioner appealed this final decision to the Court. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 27 years of age. Petitioner attended special education classes through the 12th grade and earned a certificate of completion. Her prior work experience includes jobs as a cashier and order taker in the fast food industry. As found by the ALJ, none of Petitioner's past work amounted to substantial gainful activity.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset

**MEMORANDUM DECISION AND ORDER - 2**

date of May 31, 2009. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's Attention Deficit Hyperactivity Disorder ("ADHD"), borderline intellectual functioning, and dysthymic disorder severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairments, specifically listings 12.02 (organic mental disorders), 12.04 (affective disorders), and 12.05 (intellectual disability). If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. The ALJ determined Petitioner's RFC limited her to following one- or two-step instructions, working in low stress environments, and performing tasks that require no mathematical calculations or detailed reading.

The ALJ found Petitioner had no past relevant work. If a claimant has no past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's RFC, age, education and work experience. At this step, the ALJ found Petitioner could successfully adjust to occupations such as fruit sorter, housekeeper, or laundry folder, and is therefore not disabled.

**MEMORANDUM DECISION AND ORDER - 3**

**STANDARD OF REVIEW**

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

**MEMORANDUM DECISION AND ORDER - 4**

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISPOSITION

In this appeal, Petitioner raises two issues. First, Petitioner contends the ALJ erred at step three by failing to properly evaluate whether her impairments medically equaled Listing 12.05C. Second, Petitioner argues the ALJ also erred in deriving her RFC without properly evaluating certain opinion evidence in the record. Because the Court finds the ALJ erred at step three, it is not necessary to reach this second issue, and the matter will be remanded for further analysis of medical equivalence.

1.   **Medical Equivalence to Listing 12.05C**

If a claimant meets *or* equals a listed impairment *and* satisfies the twelve month duration requirement, the claimant is presumed disabled regardless of age, education and work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d). A claimant bears the burden of

**MEMORANDUM DECISION AND ORDER - 5**

producing medical evidence to establish all of the requisite medical findings that her impairments meet or equal any particular listing. *Bowen v. Yuckert,* 482 U.S 137, 146, n. 5 (1987). If the claimant alleges equivalence to a listing, the claimant must proffer a theory, plausible or otherwise, as to how her combined impairments equal a listing. *See Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir. 2001). An impairment, or combination of impairments, is medically equivalent to a listing "if it is at least equal in severity and duration to the criteria of any listed impairment," considering "all evidence in [the] case record about [the] impairment(s) and its effects on [the claimant] that is relevant…." 20 C.F.R. § 404.1526(a), (c). Further, equivalence depends on medical evidence only; age, education, and work experience are irrelevant. *Id.* at § 404.1526(c). Finally and critically, "the claimant's illnesses 'must be considered in combination and must not be fragmentized in evaluating their effects.'" *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995) (quoting *Beecher v. Heckler*, 756 F.2d 693, 694-95 (9th Cir. 1985)).

Here, the ALJ found that Petitioner's impairments neither met nor equaled any listing. Specifically, the ALJ found that Petitioner's impairments did not meet or equal Listings 12.02 (organic mental disorders), 12.04 (affective disorders), and 12.05 (intellectual disability). Petitioner argues the ALJ was required, but failed, to properly evaluate whether the combination of her impairments medically equaled Listing 12.05C. Had he done so, Petitioner maintains, the ALJ would have been directed to find Petitioner disabled.

Listing 12.05 provides a two-prong test for determining whether a claimant suffers

from Intellectual Disability. First, there must be evidence of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested…before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, ¶ 12.05. If the evidence shows onset before age 22, the second prong can be satisfied in four distinct ways described in subparagraphs A through D. *Id*. Petitioner contends she medically equals subparagraph C, which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*. at ¶ 12.05(C).

The parties do not dispute that: (1) Petitioner's impairments began before age 22; (2) Petitioner's ADHD, dysthymic disorder, and borderline intellectual functioning are all severe impairments that limit her ability to perform basic work activities; (3) a 1995 test indicated a full scale IQ of 75; and (4) a 2009 test indicated a full scale IQ of 71. *See* (AR 18-20.) Because of her IQ scores, however, it is clear that Petitioner does not *meet* Listing 12.05C. Thus, the issue is whether ALJ Molleur erred by concluding "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." (AR 20.)

"A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not" equal a listing. *Lewis*, 236 F.3d at 512 (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)). In concluding that Petitioner did not medically equal any listing, the ALJ did not address evidence that showed Petitioner's impairment began

**MEMORANDUM DECISION AND ORDER - 7**

before age 22. In her testimony before the ALJ, Petitioner stated that she had been involved in special education programs throughout school. (AR 46.) This testimony is supported by school records incorporated into the administrative record. (AR 240-261.)

The school records, all of which were prepared before Petitioner reached age 22, note she performed below grade level, suffered from ADHD, and faced "significant deficits with social skills and daily living skills." (AR 248-56.) This type of evidence is generally sufficient to satisfy the first prong of the 12.05C analysis. *See*, *e.g.*, *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1060-1061 (C.D. Cal 2010) (deficits in adaptive functioning before age 22 shown where claimant attended special education classes, tested below grade level, and had difficulty relating to peers); *Walberg v. Astrue*, No.C08-0956, 2009 WL 1763295, at *9 (W.D. Wash. June 18, 2009) (same); *Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (same). Thus, there is substantial evidence in the record to show onset before age 22, which the ALJ did not address in his findings on Listing 12.05.

Additionally, Petitioner alleges the ALJ failed to adequately consider evidence demonstrating equivalence with the second prong of Listing 12.05C. Emphasizing her most recent full scale IQ score of 71, Petitioner contends that the ALJ should have followed the Social Security Administration's Program Operations Manual System ("POMS"), which states in relevant part:

> Listing 12.05C is based on a combination of an IQ score with an additional and significant mental or physical impairment. The criteria for this paragraph are such that a medical equivalence determination would very

**MEMORANDUM DECISION AND ORDER - 8**

> rarely be required. *However, slightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination*. It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

POMS § DI 24515.056(D)(1)(c) (emphasis added).[2] This excerpt raises the question of whether, given Petitioner's borderline IQ score, the ALJ should have provided more support for his equivalence determination.

As an initial matter, the Court recognizes "POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010). Rather, POMS and the interpretations in it "are 'entitled to respect,' but 'only to the extent that those interpretations have the power to persuade.'" *Id*. (quoting *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (internal quotations omitted)). The persuasive force of the guidance provided in POMS depends on "the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements," among other factors. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). One additional factor is the extent to which an interpretation in POMS relates to a regulation that imposes a mandatory obligation or merely requires "consideration" of certain evidence. *Lockwood*, 616 F.3d at 1072-73.[3]

---

[2] *Available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424515056.
[3] In *Lockwood*, the United States Court of Appeals for the Ninth Circuit held that an ALJ did not err by failing to explain her reasons for classifying a claimant—who was less than two months shy of her 55th birthday—as a "person closely approaching advanced age" despite

**MEMORANDUM DECISION AND ORDER - 9**

In this case, the equivalence determination is not a discretionary consideration. Because the ALJ found Petitioner did not meet any listed impairment, the ALJ was obligated to make an equivalence determination. 20 C.F.R. § 404.1529(d)(3) ("If your impairment is not the same as a listed impairment, *we must determine whether your impairment(s) is medically equivalent to a listed impairment*.") (emphasis added). Moreover, the section of POMS addressing 12.05C equivalence has remained unchanged since at least 2008. *See Didway v. Astrue*, 303 Fed.Appx 553, 554 (9th Cir. 2008) (discussing applicability of POMS § DI 24515.056(D)(1)(c)).[4] In *Didway*, the United States Court of Appeals for the Ninth Circuit found no error where the ALJ "provided a comprehensive six-page evaluation" in support of the conclusion that a woman with an IQ of 75 did not medically equal Listing 12.05C. *Id*; *see also Gonzales v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (upholding as adequate the ALJ's four-page evaluation of evidence).

In contrast, ALJ Molleur provided less than two pages of analysis to support his conclusions on three separate listings. (AR 20.) Most of this analysis is devoted to finding Petitioner does not *meet* Listings 12.02, 12.04, and 12.05. Only one conclusory sentence squarely addresses equivalence. There, the ALJ stated: "No treating or examining

---

language in POMS requiring a detailed analysis in any "borderline age situation." 616 F.3d at 1072-73. There, the court found POMS unpersuasive, noting that the Administration had recently added the explanation requirement, the requirement conflicted with other agency guidance, and the regulation at issue only promised the ALJ would "consider" using a higher age category. *Id*.

[4] The *Didway* decision "is not precedent except as provided by 9th Cir. R. 36-3." 303 Fed. Appx. at 553 n.**. Although *Didway* is not binding on this Court, the Court finds its reasoning persuasive, particularly because it addresses a legal and factual situation very similar to that presented in this case.

**MEMORANDUM DECISION AND ORDER - 10**

physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments." (*Id.*) Under the circumstances of this case, more analysis is necessary.

The Court also finds POMS persuasive in this case for the following reasons. Here, POMS reflects a relatively consistent interpretation of the regulations and elaborates on the Listing analysis, a mandatory part of the five-step sequential evaluation process. The guidance is also persuasive because it shows the Administration is aware that intellectual disabilities sometimes defy ready categorization. Accordingly, in rare cases where an otherwise impaired claimant falls just outside 12.05C's bright-line IQ range, POMS instructs that an equivalence determination may be appropriate. In response, the Commissioner asserts the ALJ's boilerplate conclusion was adequate because POMS says such a determination would "very rarely be required." (Respt.'s Br. 8-9, Dkt. 21.) But *rarely* does not mean *never*.

Although not every case requires an extensive discussion of equivalence, some do. It is true that the ALJ is not required, "as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez*, 914 F.2d at 1201 (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)); *see also Didway*, 303 Fed. Appx. at 554 ("[T]he ALJ is not required to perform a detailed analysis for every possible listing or equivalent."). But here, the ALJ acknowledged Petitioner's theory that her impairments combine to make her distractible, unable to concentrate, and easily

**MEMORANDUM DECISION AND ORDER - 11**

angered, all of which have detracted from her ability to remain employed. (AR 21.) And, unlike the claimant in *Didway*, Petitioner is one single IQ point away from fully meeting Listing 12.05C. This fact—the uncontroverted result of an examination by Dr. Starr, the State's examining psychiatrist[5]—alone should have prompted at least a brief analysis of 12.05C equivalence.

A more robust equivalence analysis is also warranted by the ALJ's finding that Petitioner suffered from three "severe" mental impairments, specifically dysthymic disorder, borderline intellectual functioning, and ADHD. (AR 18.) These findings are significant because, in addition to a full scale IQ between 60 and 70, Listing 12.05C requires "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, ¶ 12.05(C).

There is substantial medical evidence in the record suggesting that these three conditions combined to impair Petitioner to such an extent that she cannot consistently perform even unskilled work. For instance, Petitioner's treating physician, Dr. Grant Belnap, opined that she has serious limitations in memory, concentration, and ability to learn new tasks. (AR 296-98, 332-335.) The notes of Dr. Starr, the State's psychiatrist, evidence similar, albeit less extreme, work-related limitations. (AR at 268-271.) Likewise, ALJ Molleur specifically found "these impairments… cause significant limitations in the claimant's ability to perform basic work activities." (AR 18.) In other words, the only reason Petitioner did not meet Listing 12.05C was because her most

---

[5] Notably, the ALJ accorded "significant weight" to Dr. Starr's opinion. (AR 25.)

**MEMORANDUM DECISION AND ORDER - 12**

recent IQ score was one point above the regulatory threshold.

Despite this slimmest of margins, the ALJ does not explain his conclusion that Petitioner's "mental impairments, considered singly and combination, do not meet or medically equal the criteria of listings 12.02, 12.04, and 12.05." (AR at 19-20.) With regard to Listing 12.05C, something more than a recitation of the regulatory standard and cursory references to medical findings are necessary to support this conclusion. Therefore, the Court finds ALJ Molleur committed legal error by not supporting his equivalence determination with substantial evidence and will remand for additional analysis of 12.05C equivalence.

**2.     Evaluation of Opinion Evidence**

Because an adequately supported equivalence analysis must come at step three— that is, before the ALJ would weigh the evidence and determine Petitioner's RFC—the Court does not reach the second issue raised in the Petition for Review.

## CONCLUSION

The record contains substantial evidence that Petitioner meets all but one of the criteria for Listing 12.05C. Although the ALJ correctly found Petitioner did not meet the listing because her IQ score was outside regulatory range, his finding that Petitioner did not medically equal the listing was conclusory and not supported by substantial evidence. There was substantial evidence to show onset of Petitioner's claimed intellectual disability before age 22, mental impairments imposing additional and significant work-related limitations of function, and a recent full scale IQ score just one point outside the

**MEMORANDUM DECISION AND ORDER - 13**

listing range. Moreover, the Administration's own guidance manual specifically indicates that an equivalence finding may be warranted in such circumstances. And the record contains evidence advancing Petitioner's theory that her ADHD, dysthymic disorder, and borderline intellectual functioning, in combination, impair her concentration to an extent that precludes her from engaging in substantial gainful activity—indeed, the ALJ specifically found she had never engaged in such activity. Yet the ALJ abruptly concluded there was no evidence to support a finding that Petitioner's combined impairments equaled Listing 12.05C. These circumstances warrant remand for a more detailed equivalence determination.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2) This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

Dated: **September 26, 2013**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 14**